<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

**VIRA PAVLENKO,** *et al.*,

                Plaintiffs,

                v.

**WILMINGTON SAVINGS FUND**
**SOCIETY,** *et al.*,

                Defendants.

Civil Action No. 25-3090 (ZNQ) (JTQ)

**OPINION**

---

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants NewRez LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and Wilmington Savings Fund Society, FSB, not in its Individual Capacity but as Trustee for CHNGE Mortgage Trust 2023-1 ("Wilmington," together with Shellpoint, "Defendants") filed on September 12, 2025.  (ECF No. 8.)  Defendants filed a memorandum of law in support of their Motion.  ("Moving Br.," ECF No. 8-1.)  Plaintiffs Vira Pavlenko, Aleksandr Vinarsky, and Viktoriya Orman ("Plaintiffs") filed an Opposition Brief ("Opp.," ECF No. 9), to which Defendants filed a Reply Brief ("Reply," ECF No. 10).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** Defendants' Motion.

1

I.      **<u>BACKGROUND AND PROCEDURAL HISTORY</u>**

Plaintiffs filed their Complaint on February 11, 2025, in the Superior Court of New Jersey. (ECF No. 1-1, Ex. A at 2.)  Plaintiffs subsequently filed an Amended Complaint on February 13, 2025.  Defendants timely removed this matter to federal court on April 23, 2025.

As alleged, on October 18, 2022, Plaintiffs were issued a mortgage for property located in Tinton Falls.  ("First Amended Complaint "FAC"," ECF No. 1-1 ¶ 7.)  Defendant Wilmington was the trustee who was assigned the mortgage note, and Defendant Shellpoint was the loan servicer. (*Id.* ¶¶ 4–5).  Defendants initiated a foreclosure action in New Jersey Superior Court against Plaintiffs on March 8, 2024.  (*Id.* ¶ 8.)

Several months later, on September 30, 2024, Plaintiffs submitted a loss mitigation application to Shellpoint for their outstanding debt on the mortgage.  (*Id.* ¶ 10.)  On October 3, 2024, Shellpoint acknowledged that it received the loss mitigation application and requested additional information from Plaintiffs.  (*Id.*, Ex. 1 at 46.)[1]  According to Plaintiffs, the requested information had been included in the original application, but they nevertheless resubmitted the requested documents on October 18, 2024.  (*Id.*)  On October 30, 2024, Plaintiffs, through counsel, sent a notice of error ("NOE") to Shellpoint requesting an update on the application.  (*Id.*, Ex. 1 at 47.)  Shellpoint did not respond to the NOE, but did send a message directly to Plaintiffs through an online portal informing them that "the loss mitigation solution [Plaintiffs] were reviewed for was not approved or if [they] were approved for the trial plan or repayment plan, that plan has been cancelled due to non-payment."  (*Id.*, Ex. 1 at 50.)  In response, Plaintiffs' counsel sent another NOE to Shellpoint on November 18, 2024, claiming that the statement made on the portal was

---

[1] The Court refers to the internal pagination of ECF No. 1-1.

incomplete and that Plaintiffs were not going to consider it as a response to Plaintiffs' application. (*Id.*)

On December 4, 2024, Plaintiffs' counsel sent another NOE to Shellpoint. (*Id.*, Ex. 1 at 59.) In that NOE, counsel noted that Shellpoint was again requesting paystubs and bank statements that it had already received. (*Id.*) Counsel also stated that Shellpoint had not responded to any prior correspondence and requested a response regarding Plaintiffs' loan modification application. (*Id.*)

On December 18, 2024, counsel sent another NOE to Shellpoint outlining similar deficiencies and again requested a response. (*Id.* at 41.) Shellpoint responded to that NOE on January 17, 2025. (*Id.* at 65.) In Shellpoint's letter, it noted that it erroneously failed to respond to a NOE it received on November 8, 2024, and that it did not receive the November 18, 2024 NOE.[2] (*Id.*) Shellpoint also explained that the loss mitigation application was denied because it had not received several required documents. (*Id.* at 65–66.)

Plaintiffs allege that Shellpoint's January 17, 2025, letter incorrectly stated that their loan application was incomplete. (FAC ¶ 14.) According to Plaintiffs, Shellpoint had in fact received all the requested documentation and was instead subjecting them to an "illusory loan modification process" to facilitate foreclosure on their home. (*Id.* ¶¶ 14–15, 25.) Based on this alleged conduct, Plaintiffs bring five causes of action: (1) violation of the Consumer Fraud Act; (2) breach of contract; (3) common law fraud; (4) violation of the Real Estate Settlement Procedures Act; and (5) violation of the Fair Debt Collection Practices Act ("FDCPA").

---

[2] It is not clear whether the NOE Shellpoint received on November 8, 2024, refers to the NOE dated October 30, 2024, or to some other NOE. Plaintiffs state in the December 19, 2024 NOE that the October 30, 2024 NOE was delivered to Shellpoint's P.O. Box on November 6, 2024. (ECF No. 1-1 at 50.) Given the slight discrepancy and lack of clarity in the FAC, the Court is unable to discern which NOE Shellpoint was referring to in its letter.

**II.      SUBJECT MATTER JURISDICTION**

The Court has original jurisdiction as to Plaintiffs' claims under federal law pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction as to Plaintiffs' claims under state law pursuant to 28 U.S.C. § 1367.

**III.     DISCUSSION**

Defendants raise numerous arguments in their Motion, including that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, and that the preclusion doctrines of res judicata and collateral estoppel bar Plaintiffs from bringing their claims. Defendants further argue that the Complaint fails to comply with the pleading requirements of Rule 8. Moreover, Defendants assert that the Complaint fails to state a claim upon which relief may be granted. The Court will address each argument below.

**A.      Subject Matter Jurisdiction**

1.      The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). Application of this "narrow" doctrine deprives a federal district court of jurisdiction to hear a case. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006). Accordingly, the Third Circuit has held that there are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox*

*Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).  "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim."  *Id.*

Here, it is clear that the first and third factors have been met.  Plaintiffs lost in state court and the state court judgment was rendered before Plaintiffs initiated this action.  Whether Plaintiffs' injuries were caused by the state court judgment or whether Plaintiffs are seeking to have this Court review and reject the state judgment, however, is a closer call.

a)    Factor Two

With respect to the second factor, *Rooker-Feldman* is not a bar to jurisdiction when the plaintiff's asserted injury is caused by the defendant's actions and not by the state-court judgment.  *See Great W. Mining & Mineral Co.*,615 F.3d at 166.  The critical task for the court is to "identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."  *Id.* at 167 (citation modified).  In *Great W. Mining & Mineral Co.*, the dispute arose from a failed miniature golf project that led to arbitration proceedings in which the plaintiff's predecessor lost and later challenged the outcome based on an alleged undisclosed conflict of interest.  *See id.* at 161.  After unsuccessful attempts to vacate the arbitration award and pursue related claims in Pennsylvania state courts, the plaintiff filed a federal § 1983 action alleging that the state-court decisions were tainted by improper influence and violated its due process rights.  *See id.* at 162.  The Third Circuit explained that, although the plaintiffs' claims implicated the state-court judgments, they did not contend that those decisions were themselves erroneous or unconstitutional.  *See id.* at 172.  Rather, the court understood the plaintiffs to allege that individuals involved in the state-court proceedings deprived them of an impartial forum—an asserted violation of their constitutional rights independent of the resulting state-court judgments.

*See id.* at 173.  Accordingly, the state-court judgments were not the cause of the plaintiff's injuries, and the *Rooker-Feldman* doctrine did not apply.  *See id.*

Similarly, in a case akin to the present matter, the Third Circuit found that the plaintiff's claims were independent of the state-court judgment.  *See Shibles v. Bank of America, N.A.*, 730 F. App'x 103, 106 (3d Cir. 2018).  In *Shibles*, the plaintiff obtained a mortgage for real property in New Jersey.  *See id.* at 104.  After experiencing some financial difficulty, the plaintiff informed the defendant that she needed loss mitigation assistance, after which the defendant sent the plaintiff a trial modification contract.  *See id.*  That contract stated that if the plaintiff could comply with a reduced payment plan during a trial period, her mortgage would be modified.  *See id.*  The plaintiff complied with the payment plan, but the defendant nevertheless commenced foreclosure proceedings against the plaintiff in state court.  *See id.*  Ultimately, the state court entered default judgment against the plaintiff and sold her house at a sheriff's sale.  *See id.*  The plaintiff then initiated a federal action, alleging state law fraud and breach of contract claims against the defendant.  *See id.*  The Third Circuit held that the *Rooker-Feldman* doctrine did not apply because the plaintiff did not allege that she was harmed by the state court's foreclosure judgment itself; rather, she claimed that her injury stemmed from the defendant's conduct that led to the foreclosure proceeding.  *See id.* at 106.

Conversely, in *Merritts v. Richards*, the plaintiff filed an action in federal court after a state court issued easements to the Pennsylvania Department of Transportation's ("PennDOT") following a condemnation action over the plaintiff's property.  62 F.4th 764, 768 (3d Cir. 2023).  In federal court, the plaintiff alleged that PennDOT's acquisition of the easements and the compensation offered for them violated the U.S. Constitution and Pennsylvania law.  *See id.*  The Third Circuit held that those claims were barred under *Rooker-Feldman* because, in part, the source

6

of the plaintiff's legal injury was the judgment in the condemnation proceedings. *See id.* at 778. It was the judicial ruling, rather than any independent action by PennDOT or its officials, that caused the plaintiff's legal injuries related to the acquisition of the easements. *See id.*

Similarly, in *Doncheva v. Citizens Bank of Pennsylvania*, the Third Circuit held that a plaintiff's claims were barred by the *Rooker-Feldman* doctrine because they sought to vacate the state court judgment. 820 F. App'x 133, 136 (3d Cir. 2020). There, the plaintiff's home was foreclosed on in a state court proceeding and the plaintiff subsequently filed suit in federal court seeking to vacate the state court judgment and have the district court declare that the plaintiff owned the home. *See id.*; *see also Gage v. Wells Fargo Bank, NA AS*, 521 F. App'x 49, 51 (3d Cir. 2013) (holding that *Rooker-Feldman* applied where the plaintiff asserted that the bank had no right to foreclose on the property and sought to have the deed to the property restored to him).

After careful review of Plaintiffs' claims in this matter, the Court is persuaded that their alleged injuries do not stem from the state court judgment itself, but rather from Defendant's alleged unlawful conduct. Plaintiffs' first claim is for violations of the Consumer Fraud Act, which stem from Defendants' misrepresentation of the terms of the loan modification application process. (FAC ¶ 25.) Defendants' alleged misrepresentations are independent of the state court judgment against Plaintiffs. Likewise, Count Two is for breach of contract, in which Plaintiffs allege that Defendants violated the duty of good faith and fair dealing in carrying out the provisions of the mortgaging services. (*Id.* ¶ 26.) Those alleged violations are, like Count One, independent of the state court judgment.

Count Three alleges that Defendants committed common law fraud by intentionally misrepresenting the status of Plaintiffs' loan modification. (*Id.* ¶ 43.) The harm here is similarly independent of the state court judgment. Although the outcome of the state court proceeding may

have been different had Defendants complied with the law, that does not mean the state court acted improperly. *See Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 547 (D.N.J. 2017) (holding that *Rooker-Feldman* did not apply even where the alleged harm may have stayed the foreclosure proceedings). In Count Four, Plaintiffs allege that Defendants violated the Real Estate Settlement Procedures Act ("RESPA") for dual tracking and failing to respond Plaintiffs' notice of errors. (*Id.* ¶¶ 58, 63.) Count Five alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by communicating directly with Plaintiffs. (*Id.* ¶¶ 72, 74.) Again, Count Four and Count Five are independent of the state court judgment, and the alleged harm would have occurred regardless of the outcome of the foreclosure proceeding.

Importantly, Plaintiffs are *not* seeking to vacate the state court judgment or obtain possession of their home, but are rather seeking damages from Defendants for their alleged unlawful conduct. Moreover, the fact that Defendants' alleged unlawful conduct led to the foreclosure action does not transform this case into one that deprives this Court of subject-matter jurisdiction. *See Shibles*, 730 F. App'x at 106; *see also Puche*, 256 F. Supp. 3d at 547 ("Violations of RESPA, or of Defendant's contractual duty of good faith and fair dealing, do not implicate the validity of the foreclosure judgment."). Indeed, the alleged harm occurred prior to or after the state court's entry of judgment against Plaintiffs. For example, Plaintiffs' RESPA claim alleges that Defendants failed to acknowledge receipt of the NOEs sent by Plaintiffs' counsel, some of which were sent after the state court entered judgment. Similarly, Plaintiffs' common law fraud claim alleges that Defendants intentionally misrepresented the status of Plaintiffs' loan modification. It was this independent tortious conduct by Defendants that injured Plaintiffs, not the state court judgment. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (holding that because the plaintiffs' claims for fraud and other torts did "not concern state-court

8

judgments, but rather independent torts committed to obtain them," *Rooker-Feldman* did not apply). Thus, Plaintiffs would have valid causes of action even if no judgment had been entered at all. *See Geness v. Cox*, 902 F.3d 344, 360–61 (3d Cir. 2018) (holding that *Rooker-Feldman* was inapplicable where the plaintiff alleged that the defendants deprived him of independent constitutional rights, injuries that would have occurred regardless of the outcome of the state court proceeding).

b)      Factor Four

The fourth factor requires a court to look at whether a plaintiff's complaint invites the court to "review and reject" the state court judgment. *See Great Western*, 615 F.3d at 166. This factor concerns "whether the federal court must conduct 'prohibited appellate review' of state-court decisions." *In re Phila. Ent. & Dev. Partners*, 879 F.3d 492, 500 (3d Cir. 2018). "Prohibited appellate review means a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." *Id.* It does not matter if the claim concerns a matter previously litigated in state court, so long as the federal plaintiff brings an independent claim, "even if that claim denies a legal conclusion reached by the state court." *Id.* "In other words, if the federal court's review does not concern the bona fides of the prior judgment, the federal court is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment." *Id.* *Rooker-Feldman* therefore does not apply because in that situation the plaintiff "is not complaining of legal injury caused by a state court judgment because of a legal error committed by the state court." *Id.*

Here, as set forth above, it is clear that Plaintiffs are not seeking to have this Court review and reject the state court's decision to foreclose on Plaintiffs' property. Rather, the legal issues in this case turn on whether Defendants breached a contract, committed fraud, and violated other statutory schemes. These are undoubtedly independent legal issues that arose regardless of the

9

outcome of the state court proceeding. Of course, these legal issues may overlap with the state court judgment, but that does not mean this Court is required to review and reject the state court's order. As the Third Circuit has explained, "a federal court can address the same issue and reach a conclusion contrary to a judgment by the first court, as long as the federal court does not reconsider the legal conclusion reached by the state court." *Id.* at 501–02.

Defendants argue that the allegations in the Complaint relate back to the foreclosure and would contradict the findings of the state court, "which demonstrates that [Plaintiffs] are really asking this court to find that the [state court] was wrong to enter Final Judgment in the Foreclosure Action." (Mot. at 13.) But the fact that a ruling in favor of Plaintiffs would undermine a valid state court order does not mean that *Rooker-Feldman* is applicable. *See In re Phila. Ent. & Dev. Partners*, 879 F.3d at 502–03; *see also Great W. Mining*, 615 F.3d at 169 (finding the *Rooker–Feldman* doctrine inapplicable to independent claims "regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment"). Moreover, the relief sought in this case is for damages arising out of Defendants' alleged tortious and contractual conduct. This case is thus unlike other cases in which the plaintiff is seeking to overturn the state court judgment or obtain possession of their home. *See e.g.*, *Gage*, 521 F. App'x at 51. Given that neither the second nor fourth factors are met, the Court is satisfied that it has subject matter jurisdiction to hear this case, and that *Rooker-Feldman* does not apply.[3]

    2.    Rule 12(b)(1)

Defendants contend that Plaintiffs Aleksandr Vinarsky and Viktoriya Orman lack standing to bring their claims because they were not parties to the loan at issue. (Moving Br. at 6.) As

---

[3] Defendants argue that *Rooker-Feldman* is applicable when the federal claims are "inextricably intertwined" with the state court's determination. However, that test appears to have predated the Supreme Court's decision in *Exxon Mobil*, and the Third Circuit has cautioned against relying on cases which suggest that the phrase "inextricably intertwined" creates an additional legal test. *See Great W. Mining*, 615 F.3d at 170 n.4.

10

Defendants correctly note in their Reply (Reply at 1), Plaintiffs failed to present any argument in opposition to Defendants' position. The Court finds that Plaintiffs have therefore conceded this issue. *See Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver of the same); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it."); *Pers. v. Teamsters Local Union 863*, Civ. No. 12–2293, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver."). Accordingly, Aleksandra Vinarsky and Viktoriya Orman will be **DISMISSED** without prejudice.[4]

### B.    Preclusion Doctrines

Defendants next argue that Plaintiffs' claims are barred under the doctrines of res judicata and collateral estoppel. (Mot. at 7–12.) At issue is the preclusive effect of the New Jersey state court's prior decision in this subsequent federal lawsuit. This implicates the Full Faith and Credit Statute, which requires the Court to look to the law of the state where the judgment was entered to determine the state court decision's preclusive effect. *See Sec'y U.S. Dep't of Lab. v. Kwasny*, 853 F.3d 87, 94 (3d Cir. 2017). As to the doctrine of res judicata, both New Jersey and federal law consider three factors: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). The rationale underlying the doctrine is to "avoid piecemeal litigation and conserve judicial resources" by requiring parties to bring all their "claims arising out of the same occurrence in a single suit." *Davis v. Wells Fargo*, 824 F.3d 333, 341–42

---

[4] For clarity and consistency within this Opinion, despite its conclusion that Plaintiffs Vinarksy and Orman must be dismissed, the Court will continue herein to refer to "Plaintiffs" in the plural.

11

(3d Cir. 2016). Accordingly, claims are barred not only if they were brought in the previous action, but also if they could have been brought. *See id.* at 342.

The first and second factors are easily met here. First, there has been a final judgment in a prior suit. As alleged, Defendants filed a foreclosure complaint against Plaintiffs on March 8, 2024. (FAC ¶ 8.) An uncontested final judgment in that matter was issued by the state court on November 14, 2024. (*Id.* ¶ 9.) Neither party disputes these facts.[5] Thus, the prior suit was "valid, final, and on the merits," satisfying the first factor under the doctrine of res judicata. *See Howard v. Wells Fargo Bank NA*, 733 F. Supp. 3d 352, 355 (D.N.J. 2024) (finding that a default judgment in a prior foreclosure proceeding was a final judgment on the merits).

Second, turning to the next step in the analysis, the Court finds that the prior suit involved "the same parties or their privies." *In re Mullarkey*, 536 F.3d at 225. Here, the plaintiff in the foreclosure action was Defendant Wilmington, who was being sued as the Trustee for the mortgage note and not in its individual capacity. (FAC ¶ 4.) Defendant Wilmington was thus the same party in the prior foreclosure proceeding.

Although Defendant Shellpoint was not a plaintiff in the prior foreclosure proceeding, it was nonetheless in privity with Wilmington. "Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right, or if a person who is not a party controls or substantially participates in the control of the presentation on behalf of a party, or if a person who is not party to an action is represented by a party, including an official or agency invested by law with authority to represent the person's interests." *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 177 (3d Cir. 1994) (citation modified). The assignee of a right

---

[5] Although the final judgment was later vacated after Plaintiffs paid off their mortgage, Plaintiffs concede that a final judgment was entered for purposes of res judicata. (Opp. ¶ 2.)

12

will be considered to be in privity with its assignor. *See Brookshire Equities, LLC v. Montaquiza*, 346 N.J. Super. 310, 319 (N.J. Sup. App. Div. 2002). The Third Circuit has explained that "[a] pre-existing legal relationship is not only a sufficient condition for privity to exist, but it is also a necessary one." *Collins*, 34 F.3d at 177. Here, Shellpoint was the loan servicer on the loan. (FAC ¶ 5.) Shellpoint was thus Wilmington's authorized agent to service and handle the mortgage transactions concerning Plaintiffs' mortgage note. This relationship establishes that Shellpoint is in privity with Wilmington for purposes of res judicata. Nor do Plaintiffs dispute this in their Opposition Brief.

The third factor requires the Court to look at whether the prior suit involved the "same cause of action." *In re Mullarkey*, 536 F.3d at 225. The Third Circuit has "disavowed attempts to create a simple test for determining what constitutes a cause of action for res judicata purposes." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 348 (3d Cir. 2010). Rather, courts should look towards the "similarity of the underlying events giving rise to the various legal claims." *Id.* To that end, "the focus of the inquiry is whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same." *Id.* Thus, the Court will evaluate each claim in the present matter to determine whether it arises from the same cause of action.

### 1. Fraud Claims

Plaintiffs allege violations of the Consumer Fraud Act (Count One) and common law fraud (Count Three). According to Plaintiffs, Defendants violated the Consumer Fraud Act by misrepresenting the terms of the loan modification process and servicing of the loan. (FAC ¶ 25.) Plaintiffs further allege that Defendants engaged in unconscionable business practices by continuing to pursue foreclosure even though Plaintiffs had submitted a complete loan modification application. (*Id.*) As to Plaintiffs' common law fraud claim, they allege that

13

Defendants intentionally misrepresented the status of the application, which led to the foreclosure and final judgment in the state court matter. (*Id.* ¶¶ 42, 43.)

These claims amount to nothing more than an attempt to relitigate the prior foreclosure proceeding. Plaintiffs' central allegation is that they submitted all required documents for a loan modification application and that Defendants' decision to proceed with foreclosure therefore constituted fraud. Plaintiffs had ample opportunity to raise this argument as a defense in the foreclosure action, particularly because the judgment in that case was entered after the date on which Plaintiffs claim to have completed their application. Moreover, the two actions arise from the same operative facts—namely, whether Defendants had the legal authority to foreclose on Plaintiffs' property. Accordingly, Plaintiffs' Consumer Fraud Act Claim (Count One) and common law fraud claim (Count Three) are barred by the doctrine of res judicata. *See Adelman v. BSI Fin. Serv.*, 453 N.J. Super. 31, 41 (N.J. Super. Ct. App. Div. 2018) (holding that res judicata barred consumer fraud act claim that could have been raised in prior foreclosure proceeding); *Farah v. Lasalle Bank Nat'l Ass'n as Trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR7 Trust*, Civ. No. 15-2602, 2020 WL 2521278, at *11 (D.N.J. May 18, 2020) (holding that fraud-based claims in a subsequent lawsuit arose out of the same underlying events as a prior foreclosure proceeding, in which the plaintiff could have asserted those claims in the earlier litigation).

### 2. Breach of Contract

Plaintiffs' breach of contract claim (Count Two), as with their Consumer Fraud Act claim, alleges that Defendants did not comply with the loan modification process as set forth in the loan servicing guidelines. (FAC ¶¶ 32–35.) According to Plaintiffs, because they fully complied with the loan modification application, Defendants should not have continued with the foreclosure. (*Id.* ¶ 35.) This claim is also based on the same underlying events: whether a foreclosure judgment

14

should have been entered against Plaintiffs. Thus, Plaintiffs' breach of contract claim is likewise barred by the doctrine of res judicata. *See Kennedy v. James B. Nutter & Co.*, Civ. No. 22-140, 2023 WL 5723019, at *3 (D.N.J. Sept. 5, 2023) (holding that the plaintiff's breach of contract claim was barred by res judicata because it arose out of the mortgage and propriety of the foreclosure, which were all subjects to the foreclosure action).

### 3.   Real Estate Settlement Procedures Act

Plaintiffs' fourth claim alleges a violation of the Real Estate Settlement Procedures Act ("RESPA"). Although pleaded as a single count, it asserts two distinct RESPA violations. The first challenges Defendants' decision to proceed with foreclosure despite Plaintiffs' alleged submission of a complete loss mitigation application. (FAC ¶¶ 45–58.) As with Plaintiffs' other claims, this theory is barred by the doctrine of res judicata. At its core, the claim contends that Defendants lacked a basis to continue the foreclosure in light of the purportedly complete application, an argument that could have been raised in the prior state foreclosure proceeding. Moreover, it arises from the same operative facts at issue in that action. Accordingly, to the extent Plaintiffs' RESPA claim is premised on Defendants' pursuit of foreclosure during the pendency of the loan modification process, it is barred by res judicata.

Plaintiffs' second alleged violation concerns Defendants' purported failure to acknowledge receipt of, or respond to, Plaintiffs' NOEs within a timely manner. (FAC ¶¶ 59–64.) Under 12 C.F.R. 1024.35(d), a loan servicer must acknowledge receipt of a NOE within five days of receipt, and under 12 C.F.R. 1024.35(e)(3)(i)(C), a loan servicer has thirty days to provide a substantive response. Although the Complaint does not clearly set this out, the Court understands Plaintiffs to allege that they sent the following NOEs to Defendants:

| Date Sent by Plaintiffs | Date Received by Defendants |
| --- | --- |
|  |  |

15

| October 31, 2024 | November 6, 2024 |
|------------------|------------------|
| November 18, 2024 | November 25, 2024 |
| December 4, 2024 | Unclear |
| December 19, 2024 | December 30, 2024 |

In the foreclosure action, the state court entered final judgment on November 14, 2024. Accordingly, three of the four alleged violations did not accrue until after entry of that judgment.[6] Plaintiffs therefore did not have the opportunity to raise these claims in the foreclosure action. As a result, Plaintiffs' RESPA claims based on Defendants' untimely responses are not barred by res judicata. *See Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse First Boston MBS ARMT 2005–8*, Civ. No. 17-8953, 2018 WL 1128498, at *6 (D.N.J. Mar. 1, 2018) ("[The RESPA claim] complains of conduct that occurred *after* final judgment was entered in the foreclosure action; therefore, Plaintiff could not have raised these claims in the foreclosure action."); *Cushing v. Greentree Mortgage Co., LP*, Civ. No. 24-5742, 2025 WL 318059, at *6–7 (D.N.J. Jan. 28, 2025) (holding that the plaintiff's RESPA claim that accrued subsequent to the foreclosure judgment was not barred by the preclusion doctrines); *Alfaro v. Wells Fargo N.A.*, Civ. No. 16-7950, 2017 WL 4969334, at *4 (D.N.J. Nov. 1, 2017) (same).

### 4.    Fair Debt Collection Practices Act

Plaintiffs' final claim alleges a violation of the FDCPA (Count Five). According to Plaintiffs, Defendants improperly communicated with them directly, rather than through counsel, in violation of the FDCPA. As alleged, Plaintiffs sent Defendants a third-party authorization form ("TPA") on September 23, 2024, which states that all communications from Shellpoint are to be

---

[6] Defendants had until November 11, 2024, to acknowledge receipt of Plaintiffs' first NOE, which could have been raised prior to the final judgment. Therefore, Plaintiffs' RESPA claim based on their first NOE is barred by res judicata.

16

made to Counsel. (FAC ¶ 69.) Again, the FAC does not clearly set out the dates of this alleged unlawful correspondence. The December 19, 2024 NOE, however, claims that Shellpoint communicated directly to Plaintiffs through its online portal on or around November 20, 2024. (ECF No. 1-1 at 41.) Based on that NOE, Shellpoint may have also communicated with Plaintiffs on or around October 3, 2024, and December 18, 2024. (*Id.*)

To the extent any of the alleged unlawful communications occurred after the entry of final judgment in the foreclosure action, Plaintiffs' FDCPA claims would not have accrued. Accordingly, res judicata does not bar Plaintiffs' FDCPA claim for any communications that occurred on or around November 20, 2024, and December 18, 2024.

However, any claims based on alleged unlawful communications pre-dating the final judgment are barred by res judicata. Here, the communications at issue arise from the same underlying events as the foreclosure action and involve the same witnesses and documentation necessary to prove or defend the claims in that proceeding. Indeed, these communications concern Plaintiffs' loss mitigation application and thus bear directly on the foreclosure proceeding. *See Arsenis v. M&T Bank*, Civ. No. 23-2601, 2025 WL 3003664, at *4 (D.N.J. Oct. 27, 2025) (holding that FDCPA claims could have been raised as counterclaims or affirmative defenses in the prior foreclosure action).[7] Accordingly, Plaintiffs' FDCPA claim based on communications that occurred on or around October 3, 2024, are barred by the res judicata.

---

[7] Defendants also argue that Plaintiffs claims are barred by the doctrine of collateral estoppel. However, as explained, the remaining claims relate to conduct that occurred after the entry of final judgment and therefore could not have been litigated in the prior state court proceeding. Thus, collateral estoppel does not bar the remaining claims. *See Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21, 24 (3d Cir. 2007) (holding that collateral estoppel does not bar subsequent suits that are based on claims that occurred after judgment was entered in the first action).

C.      Rule 12(b)(6)

1.      RESPA Claims

Plaintiffs remaining RESPA claims arise under 12 U.S.C. §§ 2605(k)(1)(C) and 2605(k)(1)(E).  Section 2605(k)(1)(C) requires a loan servicer to "take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."  Section 2605(k)(1)(E) prohibits a loan servicer from failing "to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  Pursuant to this latter provision, Plaintiffs allege that Defendants failed to comply with 12 C.F.R. §§ 1024.35(d) and 1024.35(e)(3)(i)(C), which as explained above, require a loan servicer to acknowledge receipt of a NOE within five days and to provide a substantive response within thirty days.

Defendants argue that Plaintiffs' RESPA claims fail as a matter of law because Plaintiffs have not alleged damages.  (Mot. at 18.)  "Courts have recognized that damages are an essential element in pleading a RESPA claim."  *Lloyd v. N.J. Housing and Mortgage Finance Agency*, 845 F. App'x 139, 144 (3d Cir. 2021).  RESPA provides for two types of damages: (1) actual damages and (2) statutory damages.  *See* 12 U.S.C. § 2605(f)(1).  To recover actual damages, a borrower must show "that (1) the loan servicer violated a particular RESPA requirement and (2) actual damages were sustained 'as a result of the failure.'"  *Kareem v. PHH Mortgage Corp.*, Civ. No. 20-7846, 2021 WL 2070609, at *9 (D.N.J. May 24, 2021).  To recover statutory damages, a borrower must show that there is "a pattern or practice of noncompliance . . ."  *Id.*

Plaintiffs argue that they have suffered various monetary damages, including fees associated with submitting the loan modification and other costs related to the foreclosure.  (Opp. at 5.)  As a threshold matter, however, nowhere in the Complaint do Plaintiffs allege that they paid

fees to submit the loan modification, incurred costs to obtain counsel, or otherwise sustained foreclosure-related expenses. In any event, it is unclear how such costs could have resulted from Defendants' alleged failure to timely respond to Plaintiffs' NOEs, given that the only remaining claimed based on that conduct occurred after judgment was entered in the foreclosure proceeding. Put differently, the damages Plaintiffs now identify stem from alleged pre-judgment conduct. Any costs associated with the sale of Plaintiffs' property flowed from the foreclosure judgment itself, not from Defendants' alleged RESPA violations. Because the only remaining RESPA claims concern post-judgment violations, Plaintiffs have not adequately alleged that the damages they incurred were the result of Defendants' alleged RESPA violations. *See Giordano v. MGC Mortgage, Inc.* 160 F. Supp. 3d 778, 783–84 (D.N.J. 2016) (dismissing RESPA claim where the alleged interest and penalties charged to the plaintiff were not the result of the alleged violation); *Block v. Seneca Mortgage Servicing*, 221 F. Supp. 3d 559, 592 (D.N.J. 2016) ("Expenses that would be incurred regardless of a violation necessarily do not occur 'as a result' of the violation.").

Moreover, Plaintiffs have not plausibly pled a "pattern or practice of noncompliance." "Pattern or practice means a standard or routine way of operating." *Kapsis v. American Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013). As alleged, Defendants failed to comply with 12 C.F.R. § 1024.35(d) on four separate occasions, all within two months. Defendants also allegedly failed to comply with 12 C.F.R. § 1024.35(e)(3)(i)(C) on three separate occasions, and then responded to Plaintiffs after receiving the fourth NOE. While there is not a magic number of violations that create a "pattern or practice," the allegations in the Complaint are insufficient to support a claim for statutory damages. At most, Defendants failed to acknowledge within five days Plaintiffs' NOEs on four separate occasions. All four NOEs were sent within two months, and ultimately Defendants responded to the fourth NOE (even if it was after five days).

19

Moreover, Plaintiffs have not alleged the existence of any violations with respect to any other borrowers. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (affirming dismissal of RESPA claim where the plaintiff failed to allege a "pattern or practice" of violations involving other borrowers); *Graham v. PHH Mortgage Corp.*, Civ. No. 25-432, 2026 WL 899427, at *9–10 (E.D. Pa. March 30, 2026) (holding that conclusory allegations that the defendants violated RESPA with other customers was insufficient to support a claim for statutory damages). Based on these allegations (or lack thereof), Plaintiffs have failed to plead that Defendants engaged in a pattern or practice of noncompliance with RESPA. Plaintiffs' RESPA claim will therefore be dismissed without prejudice.

> ### 2. FDCPA Claim

Plaintiffs' final claim is for an alleged violation of the FDCPA. As alleged, Defendants violated the FDCPA by communicating directly with Plaintiffs instead of through their counsel. (FAC ¶ 72.) Specifically, Plaintiffs allege that they submitted a TPA to Defendants on September 23, 2024. (*Id.* ¶ 12.) The TPA states that "all correspondence must be directed to" Plaintiffs' counsel and that "there shall not be any communication, either written or oral, directly with the Borrower for any reason." (*Id.*, Ex. 2.) Despite submitting the TPA, Defendants allegedly continued to communicate directly with Plaintiffs through an online portal related to the loss mitigation application. (*Id.* ¶ 13.) Defendants argue that this claim fails because the communications by Defendants were not made "in connection with the collection of a debt." (Mot. at 22.)

The FDCPA prohibits a debt collector from communicating "with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." *Vilinksy v. Phelan Hallinan & Diamond, PC*, 640 F. App'x 139, 141 (3d Cir. 2016). "[C]ommunications that include discussions of the

20

status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245–46 (3d Cir. 2014).

Here, Defendants allegedly communicated to Plaintiffs regarding their loss mitigation application, which "could reasonably be characterized as 'requests for financial information' that were 'part of a dialogue to facilitate satisfaction of a debt' under the FDCPA's broad definitions of 'communication' and 'debt.'" *Brouillette v. CitiMortgage, Inc.*, Civ. No. 23-4304, 2024 WL 2796529, at *10 (D.N.J. May 31, 2024); *see also Mannarino v. Ocwen Loan Servicing, LLC*, Civ. No. 17-2564, 2018 WL 1526558, at *7 (D.N.J. March 28, 2018) ("[Defendant's] communications about the loss mitigation process constitute debt collecting communications, and arguably, [Defendant] misled Plaintiff."); *Plouffe v. Bayview Loan Servicing, LLC*, Civ. No. 15-5699, 2016 WL 6442075, at *6 (E.D. Pa. Oct. 31, 2016) (holding that communications concerning loss mitigation procedures were debt collection activities under the FDCPA). Thus, contrary to Defendants' assertion, Plaintiffs have adequately alleged a violation of the FDCPA.[8]

## IV.    CONCLUSION

For the reasons stated above, the Court will **GRANT-IN-PART AND DENY-IN-PART** Defendants' Motion to Dismiss. Plaintiffs Aleksandr Vinarsky and Viktoriya Orman will be **DISMISSED WITHOUT PREJUDICE.** Plaintiffs' claims barred by res judicata will be

---

[8] Defendants argue that the Complaint fails to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). (Moving Br. at 6–7.) Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)). This argument fails, because as explained, Plaintiffs have alleged who committed the unlawful conduct, what that conduct is, and a general timeframe for when that conduct occurred. In other words, Defendants have "fair notice of the claim asserted so as to enable [them] to answer and prepare for trial." *Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 84 (3d Cir. 2020) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). Thus, the Court finds that the Complaint satisfies the pleading requirements of Rule 8.

**DISMISSED WITH PREJUDICE** because any further amendment would be futile.  Plaintiffs'

remaining claims will be **DISMISSED WITHOUT PREJUDICE**, except that Plaintiffs' FDCPA

claim (Count Five) based on conduct that occurred after November 14, 2024 will be allowed to

proceed.  An appropriate Order will follow.


Date: April 22, 2026


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**